**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 13, 2011, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: January 13, 2011**

**Arthur I. Harris
United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 10-21313 |
| | ) | |
| WILLIAM INGRAM, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |

MEMORANDUM OF OPINION[1]

This *pro se* chapter 13 case is currently before the Court on a motion for relief from stay filed by *pro se* creditor, Allen Davis. Davis seeks relief from stay so that he can resume eviction proceedings he initiated against the debtor, William Ingram, in the Housing Division of the Cleveland Municipal Court. Those state court proceedings have been stayed as a result of the bankruptcy case that Ingram filed on November 17, 2010. For the reasons that follow, the motion for relief from stay is granted.

---

[1] This memorandum of opinion is not intended for official publication.

*Factual and Procedural Background*

The residential real property at issue in this motion for relief from stay is located at 915 London Road, Cleveland, Ohio. Apparently, Allen Davis is the current owner of the property, and the debtor, William Ingram, currently resides there; however, Ingram's exact status as a tenant, holdover tenant, holder of a land contract, or some other status, is uncertain. According to online records of the Cuyahoga County Auditor and records in Ingram's current and previous bankruptcy cases, Ingram purchased the property in question on May 7, 2004. After Ingram defaulted on his mortgage, the property was eventually sold at a foreclosure sale on June 16, 2008, and the sale was confirmed on August 18, 2008. Although Ingram was unsuccessful in his numerous attempts to retain ownership of the property in previous bankruptcy cases, Ingram did receive a chapter 7 discharge in Case No. 07-19493 on April 6, 2009.

On June 17, 2009, Davis apparently purchased the property from the bank that was the successful bidder at the sheriff's sale. Davis apparently paid $9,000 for the property. It is unclear whether Davis and Ingram had any relationship before Davis purchased Ingram's former residence from the bank in 2009. It appears that in May of 2010, Ingram and Davis entered into negotiations for Ingram to purchase the property on some sort of rent-to-own arrangement. Whether those negotiations resulted in a binding agreement, and the terms of any such agreement remain uncertain. Nevertheless, the parties apparently are in

agreement that Ingram took possession of the property in June of 2010 and remains in possession of the property as of this date. The parties also apparently agree that Ingram paid Davis $2,250 as a deposit or down payment, plus two additional payments of $500 each, for a total of $3,250. It is also undisputed that Davis has initiated eviction proceedings against Ingram in the Housing Division of the Cleveland Municipal Court, and that Ingram has raised various defenses and counterclaims in those state court proceedings.

It is also undisputed that Davis obtained an eviction order from the state court; however, that eviction order was vacated by the state court as a result of the new bankruptcy case that Ingram filed on November 17, 2010. After Ingram filed his *pro se* bankruptcy case, Davis filed a *pro se* motion seeking relief from stay so that Davis could resume eviction proceedings against Ingram in state court. The Court heard argument on Davis's motion on an expedited basis on December 16, 2010. After the initial hearing, the Court ordered Ingram to promptly deposit with the Court $2,500, which the Court estimated was the amount needed to cure Ingram's default on his purported rent-to-own contract with Davis. On December 17, 2010, Ingram deposited the required funds. On January 6, 2011, the Court heard further argument from Davis and Ingram on the motion for relief from stay, after which the Court took the matter under advisement.

*Discussion*

Section 362 of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

A bankruptcy court may lift the automatic stay "for cause." 11 U.S.C. § 362(d)(1). Because the Code provides no definition of what constitutes "cause" under § 362(d), courts must determine whether discretionary relief is appropriate on a case-by-case basis. *See Trident Ass'n Ltd. P'ship v. Metropolitan Life Ins. Co.( In re Trident Associates Limited P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995)) (holding that a bankruptcy court must consider the "totality of the circumstances" when deciding to lift the automatic stay for cause); *Laguna Ass'n Ltd. P'ship v. Aetna Cas. & Sur. Co.* (*In re Laguna Associates Limited Partnership),* 30 F.3d 734, 737-38 (6th Cir. 1994)).

In a typical lease arrangement or land contract, a chapter 13 debtor would normally have the opportunity to promptly cure a default, compensate a party for any pecuniary loss, and provide adequate assurance of future performance. *See*

11 U.S.C. § 1322(b)(3). There is also a specific provision for the cure of a lease "involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor." 11 U.S.C. § 362(b)(22). Whether the purported agreement between Ingram and Davis fits within this provision is unclear.

To the extent that the state court has determined that there was no binding agreement, or that the relationship between the parties is at best a month-to-month tenancy, Ingram has no contract to cure. Therefore, any opportunity to cure a default through a chapter 13 bankruptcy plan would be of no benefit. It would be analogous to a debtor opposing a creditor's motion seeking relief from stay after a leased vehicle's term had already expired. If the term of the lease is over, the debtor no longer has a contract to cure.

On the other hand, if Ingram partially performed on an agreement which was never binding, Ingram might well be entitled to recover damages from Davis to the extent that he paid Davis for more than the rental value of the property. Whether Davis must return some or all of the $3,250 that Ingram paid as a down payment/rent, or whether Ingram owes damages to Davis for additional rent beyond $3,250 is uncertain. Nevertheless, this Court believes that the Housing Division of the Cleveland Municipal Court is better situated to make these

determinations. And, in particular, to the extent that it appears that the state court has already determined that there is no written lease or binding rent-to-own contract that Ingram might cure, the Court finds good cause for granting relief from stay. Should the state court eventually determine that there is a binding legal or equitable agreement between Davis and Ingram that can be cured, Ingram would be free to file a motion seeking reinstatement of the automatic stay in this Court.

Finally, the Court is uncertain about what to do with the $2,500 that Ingram deposited with the Clerk of the Bankruptcy Court on December 17, 2010. If this were a written lease that fell within 11 U.S.C. § 362(b)(22) and (*l*), the proper step would be to turn the funds over to Davis as lessor. But the state court's determination that there apparently is no binding written lease suggests that this provision is inapplicable. In addition, during argument before this Court on January 6, 2011, Davis indicated that he would prefer a simple order giving him relief from stay, rather than to continue litigation over the $2,500 deposited with the Court. Accordingly, absent a written request by Davis filed by January 27, 2011, the Court will issue an order directing the clerk to return the $2,500 to Ingram.

*Conclusion*

For the reasons stated above, Davis's motion for relief from stay is granted, and the automatic stay is terminated with respect to the premises located at 915 London Road, Cleveland, Ohio. Pursuant to Bankruptcy Rule 4001(a)(3), this order is itself stayed until the expiration of 14 days after its entry. In addition, unless Davis files a written request with this Court **by January 27, 2011**, seeking turnover of the $2,500 to himself or to the Clerk of the Cleveland Municipal Court, the Court will issue an order directing the clerk to return the $2,500 to Ingram.

IT IS SO ORDERED.